UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MAREITTIA WILLIAMS,

       Plaintiff,

v.                                                       CASE NO. 6:18-cv-1810-Orl-41JBT

ANDREW M. SAUL,
Commissioner of the
Social Security Administration,

       Defendant.
_____/

## **REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** is before the undersigned on Plaintiff's appeal of an administrative decision denying her applications for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income. In a decision dated February 14, 2018, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, as defined in the Social Security Act, from March 30, 2015, the alleged disability onset date, through the date of decision. (Tr. 10–24.) Plaintiff has exhausted her available administrative remedies and the case is

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

properly before the Court. The undersigned has reviewed the record, the memoranda, and the applicable law. For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

## I. Issues on Appeal

Plaintiff raises the following two issues on appeal:

> Issue Number 1:
>
> Whether the ALJ erred in determining that the claimant has the residual functional capacity to perform light [work] with some non-exertional limitations after failing to weigh and consider the opinions of the claimant's treating physicians and the medical evidence.
>
> Issue Number 2:
>
> Whether the ALJ erred in failing to adequately weigh the claimant's credibility when the record clearly reveals that the Plaintiff suffered from documented impairments causing significant limitations.

(Doc. 18 at 13, 18.)

## II. Standard of Review

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations

and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

### III.     The ALJ's Decision

At step two of the sequential evaluation process, the ALJ found that Plaintiff had the severe impairments of "obesity, status post bilateral knee surgery, degenerative disc disease, hypertension, gastritis, H. Pylori infections, mild aortic aneurysm, and asthma."[2]  (Tr. 13.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing.  (Tr. 15–17.)  Prior to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> [T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations, the claimant could occasionally climb ramps, stairs, ladders, ropes, or scaffolds.  She could frequently balance or stoop and occasionally kneel, crouch, and crawl.  The claimant should avoid concentrated exposure to hazards, fumes, odors, dusts, and gases.

(Tr. 17.)

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a fast food worker and bottle attendant. (Tr. 21–22.) Alternatively, at step five, the ALJ found that other jobs existed in significant numbers in the

---

[2] The sequential evaluation process is described in the ALJ's decision.  (Tr. 11–12.)

national economy that Plaintiff could perform.  (Tr. 22–23.)  Therefore, Plaintiff was not disabled.  (Tr. 23.)

## IV. Analysis

### A. Physician "Opinions"

Plaintiff first argues that the ALJ erred in failing to state the weight she assigned to the "opinions" of Plaintiff's treating primary care physician, Dr. Obaydah AbdurRaqeeb.  (Doc. 18 at 13–18.)  Plaintiff summarizes her argument as follows:

> [I]n the instant case, the ALJ does not indicate the weight she assigned to the claimant's treating physician, Dr. Raqueeb [sic].  (Transcript 10-24).  The records from Dr. Raqueeb show that Ms. Williams had significant problems with pain, ambulating, transferring, sitting, gait, and required the use of a cane.  (Transcript 941, 970, 977, 1004, 1008, 1028, 1054, 1083, 1164, 1168, 1298).  Yet, the ALJ did not indicate the weight assigned to the opinions of Dr. Raqueeb, so it is impossible to know how these opinions were factored into the residual functional capacity determination of the ALJ.

(Doc. 18 at 17.)

The undersigned recommends that the Court reject this argument because Dr. AbdurRaqeeb did not render any opinions within the meaning of the relevant case law.  Plaintiff does not identify any opinions rendered by Dr. AbdurRaqeeb; rather, she merely cites to treatment notes that mostly contain Plaintiff's subjective history.  (*See* Tr. 941, 970, 977, 1004, 1028, 1054, 1164.)  A few of the cited records contain physical examination findings, such as that Plaintiff was walking with a cane and/or had an "antalgic gait."  (Tr. 1008, 1083, 1168.)  Thus, Plaintiff

4

appears to be arguing that the ALJ needed to assign weight to multiple entries in the treatment notes, including her own subjective complaints. The undersigned recommends that the Court reject this argument.

In support of this argument, Plaintiff cites *Winschel*. (Doc. 18 at 16–17.) The undersigned recommends that this case is distinguishable from *Winschel* because the cited treatment notes in this case do not include judgments about the severity of Plaintiff's impairments, or what she can still do despite those impairments, within the meaning of *Winschel*. Moreover, the undersigned recommends that any error on the ALJ's part in failing to treat certain portions of the treatment records as opinion evidence is harmless because Plaintiff has not shown how any of these notes, other than perhaps her subjective complaints, is inconsistent with the ALJ's RFC assessment.

In *Winschel*, the Eleventh Circuit stated:

> "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." *Lewis* [*v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)]; *see also* 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2).
> . . .
>
> Moreover, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir.

5

> 1987) (per curiam). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

631 F.3d at 1178–79.

In *Winschel*, the ALJ "referenced Winschel's treating physician only once, and that reference merely noted that Winschel saw the doctor monthly." *Id.* at 1179. "The ALJ did not mention the treating physician's medical opinion, let alone give it 'considerable weight.'" *Id.* The Eleventh Circuit rejected the Commissioner's argument that the ALJ was not required to assign evidentiary weight to Winschel's treating physician's treatment notes because they did not contain a "medical opinion," finding that:

> The treating physician's treatment notes included a description of Winschel's symptoms, a diagnosis, and a judgment about the severity of his impairments, and clearly constituted a "statement[ ] from [a] physician . . . that reflect[s] judgments about the nature and severity of [Winschel's] impairment(s), including [Winschel's] symptoms, diagnosis and prognosis, what [Winschel] can still do despite impairment(s), and [Winschel's] physical or mental restrictions."

*Id.* The Eleventh Circuit ultimately determined that the ALJ's conclusions suggested that she had not considered pertinent elements of the opinions of both a treating and an examining physician, and therefore reversed for the ALJ to "explicitly consider and explain the weight accorded to the medical opinion

6

evidence."[3] *Id.*

The undersigned recommends that *Winschel* does not stand for the proposition that the ALJ must treat as opinion evidence, and assign weight to, every subjective complaint, physical examination finding, impression, diagnosis, or treatment plan referred to in the records.  To interpret *Winschel* in this manner would place an unrealistic burden on ALJs because it would require them to address innumerable patient complaints, and physician observations, findings, impressions, diagnoses, and remarks.[4]  In addition, Plaintiff's argument is contrary to the law that the ALJ need not refer to every piece of evidence in the decision. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.") (internal citations and quotation marks omitted).  Thus, the undersigned recommends that the ALJ did not err in failing to state the weight she was according to the cited portions of treatment records of Dr. AdburRaqeeb.

---

[3] The Eleventh Circuit never quoted from or specifically described the pertinent medical records at issue.

[4] Moreover, diagnoses do not establish disability.  *See Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("[A] diagnosis or a mere showing of a deviation from purely medical standards of bodily perfection or normality is insufficient [to prove disability]; instead, the claimant must show the effect of the impairment on her ability to work.") (quotations omitted).

In addition, the undersigned recommends that any error on the ALJ's part in failing to treat certain portions of the treatment records as opinion evidence is harmless because Plaintiff has not shown how any of these portions is inconsistent with the ALJ's RFC assessment. *See Shaw v. Astrue*, 392 F. App'x 684, 687 (11th Cir. 2010)[5] ("Although he did not specifically address the findings regarding poor functionality in dealing with supervisors or stress, his RFC finding was not inconsistent with this.") (footnote omitted). Thus, the undersigned recommends that, to the extent any actual opinion evidence might exist somewhere in Plaintiff's treatment records, the ALJ's failure to address it as such is harmless.

Moreover, the undersigned recommends that the ALJ adequately reviewed the treatment records, including the records of Dr. AbdurRaqeeb. For example, regarding Plaintiff's knee and back impairments, the ALJ stated in part:

> As for the knees, the claimant had bilateral knee replacement surgeries. She had imaging showing osteoarthritis in her knees (Ex. B64F). She had treatment with Robert Brennan, M.D., orthopedic specialist (Ex. B3F; B28F; B31F; B46F; B69F). In January 2015, Dr. Brennan performed a revision of the claimant's left total knee replacement (Ex. B26F, B3F/47). In April 2015, the claimant reported that she was doing well and happy with the surgery. She reported that she had less pain (Ex. B3F/1). On examination, the claimant had no left knee tenderness and good range of

---

[5] Although unpublished Eleventh Circuit decisions are not binding precedent, they may be persuasive authority on a particular point. *See, e.g.*, *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive."). Rule 32.1 of the Federal Rules of Appellate Procedure expressly allows citation to federal judicial unpublished dispositions that have been issued on or after January 1, 2007. Fed. R. App. P. 32.1(a).

8

motion. She was neurovascularly intact (Ex. B3F/2). Then the claimant began complaining about her right knee (Ex. B69F). In March 2016, she had a right knee arthroscopic surgery. Then in April 2016, the claimant elected to proceed with a right knee replacement (Ex. B66F; B69F/18). In June 2016, the claimant had a right knee total replacement (Ex. B69F/22). After the surgery, in July 2016, the claimant had antalgic gait and she was walking with a cane. (Ex. B39F/6, 13). In August and September 2016, the claimant had some contracture noted in her right knee. The claimant was unable to flex her right knee past 90 degrees. It appeared that she did not have aggressive enough physical therapy after the right total knee replacement (Ex. B28F/2; B68F; B69F/33-38). Then in October 2016, the claimant had a right knee manipulation under anesthesia. (Ex. B68F). In November 2016, the claimant reported lots of pain and stiffness, but later records from 2017, reported the claimant was doing better. She was walking well. The claimant had only occasional pain and good range of motion (Ex. B28F/6; B31F/22; B46F/6-8; B70F).

. . .

The claimant had an appointment with Brevard pain Management in May 2015. She reported pain in her back. The claimant was using marijuana for pain. She was diagnosed with cervical and lumbar disc displacement, sciatica, and long-term use of pain medications. The claimant was referred to an orthopedic or neurosurgeon (Ex. B67F). The claimant has reported to her primary care physician at Brevard some chronic back pain and flares with antalgic gait (Ex. B42F/49). The claimant has also been noted with normal gait at times (B4F/3; B6F/17; B49F/3; B42F/11). The claimant testified she did not have back surgery. As for the claimant's allegations that she used a cane, it appeared from the records she was using a cane after her knee surgery, but it did not appear that she continued to medically need a cane due to ongoing knee or back pain.

(Tr. 18–19.)

Plaintiff argues that the ALJ erred in relying on the records of physicians who

9

were not treating her for her orthopedic problems to determine that Plaintiff had been "noted with normal gait at times" and that "it did not appear that she continued to medically need a cane due to ongoing knee or back pain." (Doc. 18 at 17–18; Tr. 19.) The undersigned recommends that this argument be rejected for several reasons. First, there was no reason why the ALJ could not rely on physical examinations done by other physicians. The ALJ could reasonably conclude that these physicians could determine whether Plaintiff had a normal gait.[6] Moreover, the ALJ also relied on records from the orthopedist who actually performed Plaintiff's knee surgeries, Dr. Robert Brennan, who noted in 2017 that Plaintiff was "walking well." (Tr. 1115, 1342.) Finally, the ALJ could reasonably conclude even from the records of Dr. AbdurRaqeeb alone that Plaintiff did not continue to medically need a cane. Although Dr. AbdurRaqeeb noted that Plaintiff was walking with a cane on October 14, 2016 (Tr. 1008), which was prior to Plaintiff's right knee manipulation on October 28, 2016 (Tr. 1289), there appears to be no mention of the cane in Dr. AbdurRaqeeb's December 8, 2016 treatment note (Tr. 1028–32) or thereafter. Of course, even if there were any such notations, the ALJ was required to consider all of the evidence, and not just the notes of Dr. AbdurRaqeeb. In short, despite Dr. AbdurRaqeeb's notation that Plaintiff had an antalgic gait at times, the undersigned recommends that substantial evidence supports the ALJ's conclusion that Plaintiff did not have a continued need for a cane after her surgeries.

---

[6] It should be noted that Dr. AbdurRaqeeb was also not an orthopedic specialist.

### B.     Plaintiff's Credibility

Next, Plaintiff argues that the ALJ's credibility assessment was deficient primarily because she used "nothing more than boilerplate type language." (Doc. 18 at 19.) "If the ALJ decides not to credit a claimant's testimony about her symptoms, the ALJ 'must articulate explicit and adequate reasons for doing so.'" *McMahon v. Comm'r, Soc. Sec. Admin.*, 583 F. App'x 886, 893 (11th Cir. 2014) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."[7] *Foote*, 67 F.3d at 1562.

The undersigned recommends that the ALJ clearly articulated adequate reasons, supported by substantial evidence, for discounting Plaintiff's credibility. In addition to any "boilerplate" language, the ALJ noted the inconsistency between Plaintiff's testimony and the medical records. For example, the ALJ observed that at the hearing, which was held on November 7, 2017, Plaintiff "had knee braces on both her knees and she alleged she needed a cane to ambulate." (Tr. 18.) However, as previously discussed, the ALJ recognized that on September 5, 2017 and October 5, 2017, Plaintiff's orthopedist, Dr. Robert Brennan, noted that Plaintiff

---

[7] "SSR 16-3p rescinded SSR 96-7p, which provided guidance on how to evaluate the credibility of a claimant's statements about subjective symptoms like pain. The new ruling eliminated the use of the term 'credibility' . . . [and] explains that adjudicators will consider whether the 'individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record.'" *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018) (citations omitted).

was "walking well." (Tr. 19, 1115, 1342.) The ALJ also observed that Plaintiff was noted to have a normal gait at times and found that Plaintiff did not continue to medically need a cane after her surgeries. (Tr. 19.) As discussed, that finding is supported by substantial evidence. Moreover, the ALJ gave the opinions of the State agency physician, Dr. Audrey Goodpasture, "significant weight." (Tr. 21.) Dr. Goodpasture also concluded that Plaintiff's allegations of the severity of her impairments "are not supported by evidence." (Tr. 182.) In short, the undersigned recommends that the ALJ's credibility finding was adequately articulated and supported by substantial evidence.

## V.  Conclusion

The Court does not make independent factual determinations, reweigh the evidence or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence. Applying this standard of review, the undersigned respectfully recommends that the Commissioner's decision be affirmed.

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Commissioner's decision be **AFFIRMED**.

2. The Clerk of Court be **DIRECTED** to enter judgment accordingly and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on July 16, 2019.

*/s/ Joel B. Toomey*
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Carlos E. Mendoza
United States District Judge

Counsel of Record